IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLOYZELLE K. JONES,<br><br>    Petitioner,<br><br>vs.<br><br>BEN CURRY, et al.,<br><br>    Respondents. | No. C 07-1013 RMW (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Prison Terms's ("Board") decision denying him parole. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer. Although given an opportunity, petitioner did not file a traverse. Based upon the papers submitted, the court concludes that petitioner is not entitled to habeas relief and DENIES the petition.

## BACKGROUND[1]

On March 19, 1984, petitioner and the victim, petitioner's girlfriend, began arguing in a local tavern. They continued to argue after leaving the tavern. The argument escalated into a

---

[1] The relevant facts pertaining to the underlying crime are taken from the transcript of the December 20, 2004 parole suitability hearing. (Resp. Ex. 1, Ex. A ("Transcript").)

physical altercation and petitioner stabbed the victim thirty times in their locked bedroom. The victim's son heard her screams and called the police. The victim died from asphyxiation and blood loss. Upon arrival, the police broke open the bedroom door and discovered petitioner lying nude on top of the victim with self-inflicted slash marks on his wrists.

In 1985, petitioner was convicted of second degree murder (Cal. Penal Code § 187) with use of a deadly weapon (Cal. Penal Code § 12022(b)) in Orange County Superior Court, and was sentenced to fifteen years to life in state prison. (Resp. Ex. 2, p. 2.) Petitioner's minimum parole eligibility date was April 21, 1998. (Transcript, p. 2.) On October 30, 2001, the Board denied petitioner parole for three years and recommended that he remain disciplinary free, upgrade vocationally, and get self help. (Id. at 32.) As of his last suitability hearing in 2004, petitioner had been incarcerated for approximately 19 years.

On December 20, 2004, petitioner testified at his parole suitability hearing. At the hearing, petitioner stated that if he were released on parole, he would live with his wife in Campbell. (Id. at 37.) Although petitioner had no employment prospects, he testified that he was determined to work anywhere he could to be productive in society. (Id.) Petitioner had no juvenile criminal history, but he had several adult convictions. (Id. at 18-19.) Petitioner had one letter of support from his wife. (Id. at 38-39.) The Board noted that petitioner completed high school, had an above average work report, and had been disciplinary free.[2] (Id. at 32, 34.) Petitioner did not attend any vocational programs after receiving his aviation certificate in 1987 because his current institution provided none. (Id. at 33, 36-37.) Petitioner attended Alcoholics Anonymous ("AA") a few times in 1990 and 1993, but stopped because he believed he was not an alcoholic. (Id. at 33-34.) While petitioner did not take advantage of any other self-help groups, he did read self-help books on his own. (Id. at 34.) In 2001, a clinical psychologist concluded that if petitioner were released on parole, petitioner's violence potential was no more than the average citizen in the community. (Id. at 35.) Ultimately, the Board found petitioner unsuitable for parole.

---

[2] Petitioner's file did show a 128-A chrono, which is a counseling memo.

Petitioner filed a petition for writ of habeas corpus in the state courts, challenging the Board's decision. The petitions were denied. (Resp. Exs. 2, 4, 6.) Subsequently, petitioner filed a habeas corpus petition in this court challenging the court's decision upholding the Board's determination.

**DISCUSSION**

**I.   Standard of Review**

This court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively

unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28. U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. Id. § 2254(e)(1).

Where, as here, the highest state court to consider the petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of petitioner's claim is the opinion of Orange County Superior Court.

## II. Issues Presented

As grounds for habeas relief, petitioner alleges that: (1) California Penal Code § 3041 creates a liberty interest protected and the Board's failure to set a parole date at the December 2004 hearing violated § 3041 and due process of law; (2) the Board's unsuitability determination was not supported by any evidence that would bring petitioner within the terms of § 3041 and due process of law; and (3) the Board's findings are an abuse of discretion. (Pet. at 6.)

### A. Respondent's Issues

In order to preserve the issues for appeal, respondent argues that California prisoners have no liberty interest in parole, and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent

contends there is no due process right to have the result supported by sufficient evidence. Because these contentions are contrary to Ninth Circuit law, they are without merit. See Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in Superintendent v. Hill, 472 U.S. 445-455 (1985)); Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128-29 (9th Cir. 2006) ("some evidence" standard identified in Hill is clearly established federal law in the parole context for purposes of § 2254(d)); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a cognizable liberty interest in release on parole").

B. Petitioner's Claims

As stated above, petitioner raises three separate claims relating to the denial of his parole. However, all of his claims can be addressed as one general claim that the Board's denial of parole was not supported by "some evidence" that petitioner "would pose an unreasonable risk of danger to society" and thus, the decision violated his due process rights.

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the Board and the Governor is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs v. Terhune, 334 F.3d 910, 915-17 (9th Cir. 2003), the court explained that the some evidence standard may be considered in light of the Board's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Id. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Id. at 916.

The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Id. (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, Sass does not dispute the argument in Biggs that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. Id. Also, noting that the parole board in Sass and Irons appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process,

given the liberty interest in parole that flows from relevant California statutes." Id. (citing Biggs, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

In petitioner's case, the Board conducted a hearing and concluded that petitioner posed "an unreasonable risk of danger to society or a threat to public safety if released from prison." (Transcript, p. 66.) The Board found petitioner unsuitable for parole because the offense was "carried out in an especially cruel and callous manner." (Id.) The Board stated that the offense was carried out in a manner similar to mutilation because the victim, someone petitioner cared about, was "slashed and stabbed 30 [sic] times." (Id.) The Board further found that the motive for the crime was trivial and inexplicable. (Id.) Additionally, the Board concluded that petitioner had an escalating pattern of criminal conduct and an unstable social history; failed to achieve vocationally; and failed to sufficiently participate in rehabilitation self-help programs such as AA or anger management. (Id.) The Board mentioned that the district attorney opposed a suitability finding and that petitioner's parole plans were not satisfactory. (Id. at 68.) The Board also commented that although petitioner appears to be "on the right track," it wished to see an updated psychological report. (Id.) Specifically, the Board felt that petitioner continued to be unpredictable and threatening to others and suggested that petitioner engage in more positive types of activities while incarcerated in order to learn how to deal with stressful situations in a non-violent manner. (Id. at 68-69.)

The superior court concluded that there was "some evidence" to support the Board's finding that petitioner was unsuitable for parole. The court referred to the underlying record, noting that petitioner's underlying crime revealed "a level of viciousness, cruelty, and indifference to human suffering that goes beyond the minimum elements necessary for second degree murder." (Resp. Ex. 2, p. 3.) The superior court also recognized that petitioner's escalating pattern of criminal conduct and unstable upbringing justified the Board's concern. (Id.) The superior court further agreed that petitioner's participation in self-help programming was limited, admitting that he had not participated in anything except AA since 1993. (Id.) In addition, the superior court commented, "In view of the apparent role played by alcohol and

anger in the commitment offense, the Board's concern over petitioner's limited programming is warranted." (Id.) The court also noted that petitioner had not developed any employment opportunities or vocational skills if released on parole. (Id. at 3-4.) Weighing all the evidence from the hearing, the superior court concluded that the Board's decision was properly based on "some evidence" supporting the denial of parole. (Id. at 4.)

The court's decision was not unreasonable. Although Biggs provided that "a continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals by the prison system and could result in a due process violation," the Board did not base its decision solely on petitioner's commitment offense. Biggs, 334 F.3d at 916-17. Although the "cruel and callous" nature of petitioner's commitment offense and his criminal history weighed heavily in the Board's determination, the Board was also concerned that petitioner had not updated vocationally, adequately participated in self-help programs, nor did he have adequate parole plans. These factors were properly considered by the Board. In light of the fact that the underlying crime did indeed involve alcohol and anger, that petitioner has not taken adequate steps to address these issues nor improve himself, some evidence supports the finding that petitioner continues to pose an unreasonable risk of danger to society if released on parole. See Lawrence, 44 Cal.4th at 1191, 1220, n. 19. The state court's rejection of petitioner's due process claim was neither contrary to nor an unreasonable application of the "some evidence" requirement of due process. Consequently, petitioner is not entitled to federal habeas relief.

## III. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability. See Rosas v Nielsen, 428 F.3d 1229, 1232 (9th Cir 2005). Accordingly, any request for a COA is DENIED as unnecessary.

///

## CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying parole proceedings. Accordingly, the petition for a writ of habeas corpus is DENIED. In addition, a COA is DENIED as unnecessary. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: 3/23/10

RONALD M. WHYTE
United States District Judge